Copies of Library Law Library

**IN THE SUPERIOR COURT
OF GUAM**

| | |
|---|---|
| FIDELITY ENTERPRISES, LTD., a Guam Corporation　　　　　)<br>　　　　　)<br>　　　　　Plaintiff,　　)<br>　　　　　)<br>vs.　　　　　)<br>　　　　　)<br>NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Foreign Corporation,　　)<br>　　　　　)<br>　　　　　Defendant.　)　 | Civil Case no. CV0753-05<br><br>**DECISION AND ORDER**<br>re: Motion for Partial Summary Judgment<br>& Motion in Limine |

## INTRODUCTION

This matter came before the Honorable Judge Michael J. Bordallo on February 7, 2012. Plaintiff was represented by Attorney Wayson W. S. Wong. Defendant was represented by Attorney Terrence E. Timblin. After considering the matters presented, the Court now issues the following decision and order granting Defendant's motion for partial summary judgment.[1]

## BACKGROUND

This action stems from a complaint for damage incurred to Plaintiff's Barrigada building from Super Typhoon Pongsona on December 8, 2002. At all times relevant to the complaint, Plaintiff's structure was insured by Defendant. The Plaintiff's building was insured for $1,700,000.00. The insurance policy required that the insured submit a written notice to the Defendant of any loss. It also required the submission of a sworn proof of loss within sixty days.

On February 4, 2003, Defendant received a letter from Adjusters International indicating that it had been retained by Plaintiff to assist it in asserting a claim for the damaged

---

[1] Because the Court grants the Defendant's motion for partial summary judgment, the motion in limine is now moot.

property. On February 7, 2003, Plaintiff submitted to Defendant a sworn proof of loss claim indicating that the amount of damage was undetermined. On March 13, 2003, Plaintiff submitted a letter to the Defendant that indicated it would claim a loss of $1,639,634.00. The amount claimed as a loss was based upon an appraisal of loss conducted by Ryder Hunt. On May 9, 2003, Defendant determined, after conducting an evaluation of the damage to Plaintiff's property, that Plaintiff's property damage claim had a value of $414,544.00. On the same date, taking into account Plaintiff's deductible, it made Plaintiff an adjusted final offer of $382,544.00 for a full settlement of its claims.

In response to Defendant's offer, on May 11, 2003, Plaintiff sent Defendant a letter demanding payment of the undisputed amount of $382,544.00, enforcement of the appraisal provision of insurance policy and naming Brain W. Molineaux as its appraiser. Plaintiff also submitted a sworn proof of loss for $1,587,756.00 to the Defendant. Following Plaintiff's appraisal demand, Defendant named Gilbert Malmgren as its appraiser on May 30, 2003. On or about June 30, 2003, William Beyer was appointed as umpire over the appraisal process. On July 31, 2003 Defendant paid Plaintiff $382,544.00.

Plaintiff withdrew its demand for appraisal on October 14, 2003. Subsequent to this withdrawal from the appraisal process, Plaintiff disengaged itself from the services of Adjuster's International and unsuccessfully attempted to engage Defendant in negotiations. It then retained Attorney Wong. On May 7, 2004 Plaintiff renewed its demand for appraisal and named Mark Ruth as its appraiser. Sometime after May 7, 2004, Defendant agreed to reopen the appraisal process and renamed its same appraiser. The appraisers for the parties reappointed William Beyer as Umpire. Between May 7, 2004 and the time Plaintiff's final request to withdraw from the appraisal process, both parties continued in the appraisal process. They negotiated the location of the hearing and arranged for the transportation and availability of

witnesses.

After notifying Plaintiff of its position that time for filling suit had expired, it is undisputed that Defendant continued to participate in the appraisal process. Defendant suggested that the hearing be moved and deadlines be changed, intimated the possibility of settlement, and met to discuss settlement through the rest of the month of April 2005. Plaintiff, on July 5, 2005, withdrew its demand for appraisal and on August 1, 2005 it filed the instant law suit. The complaint alleges the following five counts: (1) breach of contract for Defendant's failure to pay additional amounts owed to Plaintiff under the insurance policy; (2) breach of contract claim for Defendant's failure to allow its appraiser to try to agree with Plaintiff's appraisers on the amounts of losses[2]; (3) breach of contract for Defendant's wrongful denial of insurance coverage on or about April 11, 2005 [3]; (4) breach of the implied covenant of good faith and fair dealing under the policy; and (5) oppression and exemplar or punitive damages.

On December 28, 2010, Defendant filed an amended motion for partial summary judgment. Defendant argues that the Court should dismiss counts 2, 3, 4, and 5 of the complaint; dismiss the Defendant's claims for attorney's fees and for costs, if any, beyond those generally regarded as recoverable; dismiss the claim for the generator; and dismiss the claims for Nexus Initial Evaluation and Temporary Repairs. Also before the Court is Defendant's motion in limine to exclude testimony of Robert W. Grantham.

**DISCUSSION**

Summary judgment is appropriate if the pleadings, depositions, interrogatories and

---

[2] Plaintiff also seeks damages, attorney's fees, and interests for such breach.

[3] Plaintiff also seeks damages, attorney's fees, and interests for such breach.

admissions on file together with the affidavits, if any show the there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Guam R. Civ. P. 56(c). *Izuka Corp. V. Kawasho International (Guam), Inc.*, 1997 Guam 10, ¶7.

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

In rendering its decision on a motion for summary judgment, the Court must draw inferences and view the evidence in a light most favorable to the nonmoving party. *Bank of Guam v. Flores*, 2004 Guam 25, ¶7. If however, the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the pleading, but must produce at least some significant probative evidence to support the pleading. *Edwards v. Pacific Financial Corporation*, 2000 Guam 27, ¶7. Consequently, the court's "ultimate inquiry is to determine whether the 'specific facts' set by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Edwards*, 2000 Guam 27, ¶7; *Iizuda*, 1997 Guam 10, ¶8; *Guam Top Builders, Inc. V. Tanota Partners*, 2006 Guam 3, ¶8. A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Edwards*, at ¶7; *Guam Top*, at ¶9.

> The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* at 322-323 (1986)(internal citations omitted).

**Count 2**

Count 2 of the Plaintiff's complaint sets forth a breach of contract claim for Defendant's failure to allow its appraiser to try to agree with Plaintiff's appraisers on the amounts of losses. Plaintiff asserts that it suffered damages as a result of such breach. Plaintiff also asks the court for damages, attorney's fees and interest as provided in 22 GCA § 18608.

A breach of contract claim is made up of four elements: "(1) existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting damages." *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). In this case, the insurance policy is a contract between the parties. The Defendant however did not breach the policy by failing to allow its appraiser to try to agree with Plaintiff's appraisers on the amounts of losses. There is nothing in the policy that requires such action, which means the Defendant could not have breached the policy based on this assertion. Thus, there is no genuine issue as to any material fact concerning Plaintiff's above mentioned assertions.

The second count also argues that it is entitled to damages, attorney's fees and interest as provided in 22 GCA § 18608. This section provides,

> **§ 18608. Failure to Pay Loss, Recovery of Amount Due and Damages.**
> In all cases where loss occurs and the insurer liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such insurer shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve percent (12%) damages upon the amount of such loss, together with all reasonable attorney's fees for the prosecution and collection of said loss; said attorney's fees to be taxed by the court where the same is heard on original action, by appeal or otherwise, and to be taxed as a part of the costs therein, and collected as other cost are or may be by law collected; and writs of attachment or garnishment filed or issued after proof of loss or death has been received by the insurer shall not defeat the provisions of this section, provided the insurer desiring to pay the amount of the claim as shown in the proof of loss or death may pay said amount into the registry of the court after issuance of writs of attachment and garnishment, in which event there shall be no further liability on

the part of said insurer.

The Court finds that this statute applies when an insurer fails to pay the loss within the time specified in the policy. Here, the policy states that the parties must ascertain the amount of loss either by agreement or by way of the appraisal process, and the Defendant then has sixty (60) days to pay for such loss. However, no agreement or appraisal award concerning the amount of loss was ever made. Thus, the statute is not applicable in the instant case because the Defendant (the insurer) was never required to pay any loss at any specific time. Therefore, the Court finds there is no genuine issue as to any material fact concerning the allegations in Count 2.

**Count 3**

Count 3 of the Plaintiff's complaint sets forth a breach of contract for Defendant's wrongful denial of insurance coverage on or about April 11, 2005. Plaintiff asserts that it suffered damages as a result of such breach. Plaintiff also asks the court for damages, attorney's fees and interest as provided in 22 GCA § 18608.[4]

A breach of contract claim is made up of four elements: "(1) existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resulting damages." Trade Finance Partners, LLC v. AAR Corp., 573 F.3d 401, 407 (7th Cir. 2009). In this case, the insurance policy is a contract between the parties. The Defendant however did not breach the policy by denying insurance coverage on or about April 11, 2005. There is nothing in the policy that requires such action, which means the Defendant could not have breached the policy based on this assertion. Thus, there is no genuine issue as to any material fact concerning Plaintiff's above mentioned assertions.

Furthermore, the policy states that the parties must ascertain the amount of loss either

---

[4] The Court need not address this issue once again. See previous section for 22 GCA § 18608 analyses.

by agreement or by way of the appraisal process, and the Defendant then has sixty (60) days to pay for such loss. However, no agreement or appraisal award concerning the amount of loss was ever made. Thus, the Defendant (the insurer) was never required to pay any loss on April 11, 2005 or at any other time.

The only evidence regarding the denial of insurance coverage on or about April 11, 2005 is a letter from the Defendant to Plaintiff's attorney. The letter only shows a genuine dispute as to the amount of the Plaintiff's coverage claim, not a breach of the policy. The Court also notes that this allegation is entirely redundant of Count 1 because, just as in Count 1, it essentially alleges that the Defendant breached the policy when it failed to pay the Plaintiff's alleged losses under the policy. Based on the foregoing, the Court finds there is no genuine issue as to any material fact concerning the allegations in Count 3.

**Count 4**

Count 4 of the Plaintiff's complaint sets forth a breach of the implied covenant of good faith and fair dealing under the policy. More specifically, Plaintiff alleges that the covenant was breached by the following: the material breaches of the policy; Defendant's contention that the Plaintiff cannot enforce any of its claims because the time to assert them has expired; Defendant's insistence on the appraisal process being formal rather than informal; Defendant's insistence that the appraisal be conducted in Hawaii instead of Guam; Defendant's delay in payment of any amounts to assist Plaintiff with its losses until the end of July 31, 2003; Defendant's encouragement of settlement negotiations but its failure to respond in good faith to Plaintiff's settlement offer; and Defendant's failure to timely respond to Plaintiff's requests for information or responses. Plaintiff also asks the court for damages, attorney's fees and costs as a result of such breach.

The law implies in every contract, including insurance policies, a covenant of good faith and fair dealing. "The implied promise requires each contracting party to refrain from doing anything to injure the right of the other to receive the agreement's benefits. To fulfill its implied obligation, an insurer must give at least as much consideration to the interests of the insured as it gives to its own interests. When the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Wilson v. 21st Century Ins. Co.*, 42 Cal.4th 713, 720 (Cal. 2007) (citing *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal.3d 208, 214–215 (Cal. 1986)).

As discussed above, an insurer's denial of or delay in paying benefits gives rise to tort damages only if the insured shows the denial or delay was unreasonable. *Frommoethelydo v. Fire Ins. Exchange*, 42 Cal.3d 208, 214–215 (Cal. 1986). As a close corollary of that principle, it has been said that "an insurer denying or delaying the payment of policy benefits due to the existence of a genuine dispute with its insured as to the existence of coverage liability or the amount of the insured's coverage claim is not liable in bad faith even though it might be liable for breach of contract." *Chateau Chamberay Homeowners Assn. v. Associated Internat. Ins. Co.*, 90 Cal.App.4th 335, 347 (Cal. Ct. App. 2001). This "genuine dispute" or "genuine issue" rule was originally invoked in cases involving disputes over policy interpretation, but in recent years courts have applied it to factual disputes as well. (See *id.* at p. 348; *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992–994 (9th Cir. 2001)).

The genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. *Wilson,* 42 Cal.4th at 723. A genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds. *Chateau,* 90 Cal.App.4th at 347. Nor does the rule alter the standards for deciding and reviewing motions for summary judgment.

The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law. [Citation.] ... On the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

*Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161–1162 (9th Cir. 2002.) Thus, an insurer is entitled to summary judgment based on a genuine dispute over coverage or the value of the insured's claim only where the record demonstrates the absence of triable issues as to whether the disputed position upon which the insurer denied the claim was reached reasonably and in good faith.

In the instant case, the Defendant delayed and denied certain payments of policy benefits due to the existence of a genuine dispute as to the amount of the Plaintiff's coverage claim. Thus, the record must demonstrate triable issues as to whether the disputed position upon which the Defendant denied the claim was reached reasonably and in good faith. The record reflects however that the Defendant thoroughly and fairly investigated, processed and evaluated the Plaintiff's claim. There is nothing in the record which indicates that the Defendant acted unreasonable or in bad faith when assessing the Plaintiff's claim. The Court notes that the Defendant was active in both appraisal processes and that it has already given the Plaintiff $382,544.00, which leads the Court to find that the Defendant acted reasonably and in good faith.

Based on the above analyses, the Court finds that there is no genuine issue as to any material fact concerning Plaintiff's claim for breach of the implied covenant of good faith and fair dealing because the Plaintiff has failed to show any evidence suggesting that the basis for

the Defendant's denial of benefits was unreasonable.[5]

**Count 5**

Count 5 of the Plaintiff's complaint sets forth an oppression claim against the Defendant. Plaintiff also asserts that it is entitled to exemplar or punitive damages against Defendant.

Guam's remedies code also authorizes, under certain circumstances, the assessment of punitive damages in order to deter unlawful conduct and punish a defendant. 20 GCA § 2120. Specifically, § 2120 provides:

> In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

*Id.* While § 2120 authorizes the assessment of punitive damages against a defendant, it alone does resolve the issue before the Court, that is, whether an insurance company be liable for punitive damages and oppression based on the breach of the policy.

Furthermore, "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights. California Civil Code § 3294. As stated above, the Defendant delayed and denied certain payments of policy benefits due to the existence of a genuine dispute as to the amount of the Plaintiff's coverage claim. The record reflects that the Defendant thoroughly and fairly investigated, processed and evaluated the Plaintiff's claim. There is nothing in the record which indicates that the Defendant had despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of the Plaintiff's rights. The Court notes that the Defendant was active in both appraisal

---

[5] The Court also grants summary judgments as to the Plaintiff's request for damages, attorney's fees and costs regarding the Plaintiff's breach of the implied covenant of good faith and fair dealing.

processes and that it has already given the Plaintiff $382,544.00, which leads the Court to find that the Defendant acted reasonably and in good faith.

Based on the above analyses, the Court finds that there is no genuine issue as to any material fact concerning Plaintiff's claim for oppression because the Plaintiff has failed to show any evidence suggesting that the Defendant acted with despicable conduct subjecting the Plaintiff to cruel and unjust hardship in conscious disregard of the Plaintiff's rights. The Court also finds there is no genuine issue as to the Plaintiff's punitive damages claim because they are not available in an action based solely upon a breach of a contractual obligation. *See Crogan v. Metz,* 47 Cal.2d 398, 405 (Cal. 1956).

**Generator, Nexus Initial Evaluation and Temporary Repairs**

Defendant also asks the Court to dismiss the Plaintiff's claims for the generator, nexus initial evaluation, and temporary repairs. With regards to the nexus initial evaluation and temporary repairs, the Court notes that the Plaintiff it is not seeking recovery of them because they have been paid. With regards to the generator, Defendant argues that the generator is outside of the building and thus not covered by the policy. The Court notes that the policy states that the Defendant shall not be liable for fences and gates or property outside of buildings.

The terms of an insurance policy are to be construed in accordance with the general rules of contract construction. *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania,* 231 Conn. 756, 770 (1995). If the terms of the policy are clear and unambiguous, then the language must be accorded its natural and ordinary meaning. *Id.* " 'However, [w]hen the words of an insurance contract are, without violence, susceptible of two [equally responsible] interpretations, that which will sustain the claim and cover the loss must, in preference, be

adopted. *Raffel v. Travelers Indemnity Co.*, 141 Conn. 389, 392 (1954); see also 4 [S.] Williston, Contracts (3d Ed. (1961)) § 621.' (Internal quotation marks omitted.) *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507 (1982); see *Hammer v. Lumberman's Mutual Casualty Co.*, 214 Conn. 573 (1990). '[T]his rule of construction favorable to the insured extends to exclusion clauses.' *Griswold v. Union Labor Life Ins. Co.*, supra, 514; *Smedley Co. v. Employers Mutual Liability Ins. Co.*, 143 Conn. 510 (1956)." *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania*, supra.

Even though ambiguities in insurance policies are to be construed in a manner most favorable to the insured, when the policy language is plain, then no such construction is required. *Izzo v. Colonial Penn Ins. Co.*, 203 Conn. 305, 309-310 (1987); *Heyman Associates No. 1 v. Insurance Co. of Pennsylvania*, supra. A court will not torture words to import ambiguity into an insurance contract where ordinary meaning leaves no room for ambiguity simply because lawyers or laymen contend for different meanings. *Downs v. National Casualty Company*, 146 Conn. 490 (1959).

Here, the policy expressly states that the coverage is limited to only the building. More specifically, it states that the building is a concrete/metal building on Route 8 in Barrigada occupied as Wholesale Distributor. Furthermore, the policy states that the Company is not liable for damage to the following property: (b) fences and gates *or property outside of buildings*; or (c) windmills, wind pumps or other towers; or (d) crop silos (or other contents): or (e) cloth awnings, marquees and tents, signs, masonry and metal smokestacks, temporary or board addition; or (f) radio or television antennas and aerials, including their masts or towers.

The Court finds that the language in the policy is clear, and all property located outside of the building is not covered. In order for property outside of the building to be covered under

the policy, an additional premium must have been charged. Here, no additional premium was charged for any property located outside of the building. Because the generator is located outside of the building, it is not covered under the policy. Thus, Court finds that there is no genuine issue as to any material fact concerning Plaintiff's claim for the generator.

**Motion in Limine**

Defendant also requests that the Court exclude the testimony of Robert W. Grantham. Defendant alleges that Mr. Grantham has been proffered by Plaintiff as an expert witness on the subject of the standards for insurance claims adjustments. The Court notes that Mr. Grantham's testimony would be for the purpose of establishing Plainitff's bad faith or oppression claims. However, as discussed above the Court granted the Defendant's motion for partial summary judgment as to those two issues. Thus, the issue is moot and Mr. Grantham cannot testify regarding any issues of bad faith or oppression.

**CONCLUSION**

The Plaintiff has failed to allege any facts whatsoever to support (1) the alleged material breaches of the policy in either Counts two or three, (2) that Defendant's denial of benefits was unreasonable for its bad faith claim, (3) that Defendant acted with despicable conduct for its oppression claim, or (4) that the generator is covered under the policy. For these reasons, the court hereby GRANTS the Defendant's motion for partial summary judgment.

SO ORDERED, this _7_ day of _June_ 2012.

Original Signed By:
HON. MICHAEL J. BORDALLO

HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

JUN 07 2012